United States District Court
for the
Southern District of Florida

| Monica Urban-Klohn, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 19-80975-Civ-Scola |
| | ) |
| Wal-Mart Stores, Inc., Defendant. | ) |

**Order Granting Motion to Dismiss**

This case is an offshoot of the underlying complaint addressed by the United States Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). In *Dukes*, the Supreme Court reversed the certification of a nationwide class of female Wal-Mart employees claiming gender discrimination. The Plaintiff here, Monica Urban-Klohn, after again seeking relief through a regional class action and then as a member of a 44-plaintiff complaint, now seeks redress individually. In her amended complaint (Am. Compl., ECF No. 3), Urban-Klohn lodges two counts under Title VII regarding her compensation: in count one she alleges disparate treatment and in count two she alleges disparate impact. Walmart contends Urban-Klohn does not plead specific, individualized facts showing that she, herself, was discriminated against, either through disparate treatment or impact; Urban-Klohn fails to establish standing; and Urban-Klohn's claims are all time-barred. After careful review, the Court agrees that Urban-Klohn fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) and thus **grants** Wal-Mart's motion (**ECF No. 7**) and dismisses Urban-Klohn's complaint.

1. **Background**[1]

Urban-Klohn began working for Walmart in 1996, in its store number 1847. (Am. Compl. at ¶ 17.) Before working at store 1847, she had worked for Publix, McDonald's, a pet store, and another Walmart store in a different location. (*Id.* at ¶ 18.) Although it is not entirely clear, it appears Urban-Klohn first worked as a cashier and then in the pet department. (*Id.*) She learned all she could about the pet department and applied to be the pet department manager several times. (*Id.* at ¶¶ 19–20.) Each time, however, the position went to a male. (*Id.* at ¶ 20.) While working in the pet department, Urban-Klohn was asked to train her male colleagues. (*Id.* at ¶ 21.) Feeling that she was thus already

---

[1] The Court accepts the complaint's factual allegations, as set forth below, as true for the purposes of evaluating the motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

performing the role of the department manager, Urban-Klohn asked her store manager, Larry Smith, why she was not being promoted into that position. (*Id.* at ¶ 22.) Although she does not recount how he answered her, she says that she learned from coworkers that Smith refused to put a woman in that position. (*Id.* at ¶ 23.) Lastly, Urban-Klohn also became aware that men in her same, or lower, position were making more money than she was. (*Id.* at ¶ 24.) She worked at Walmart until 2000.

Urban-Klohn also provides an additional sixty paragraphs of background information regarding Walmart's organizational structure, the roles various salaried positions played in the organization regarding compensation and promotional decisions, and a number of policies and practices that guided these decisions. (*E.g.*, *id.* at ¶¶ 25–85.) Urban-Klohn additionally sets forth facts showing that Walmart's management team was aware that, on average, female employees were paid less than men and many female employees experienced other disparities. (*Id.* at ¶¶ 43, 73–85).

## 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### 3. Discussion

### A. Urban-Klohn fails to sufficiently allege that Walmart intentionally discriminated against her with respect to her pay.

Under Title VII of the Civil Rights Act, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). "[C]omplaints alleging discrimination . . . must meet the 'plausibility standard' of *Twombly* and *Iqbal*." *Henderson v. JP Morgan Chase Bank, N.A.*, 436 Fed. App'x 935, 937 (11th Cir. 2011). Thus, Urban-Klohn's complaint must contain "sufficient factual matter" to support a reasonable inference that Walmart engaged in intentional gender discrimination against her in relation to her compensation. *Henderson*, 436 Fed. App'x at 937. There are any number of ways Urban-Klohn can do this, including "alleging facts showing that similarly-situated [male employees] were offered more favorable [employment] terms," *id.*, or direct evidence of discrimination, *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004). After careful review, the Court agrees with Walmart and finds Urban-Klohn has not set forth sufficient factual allegations that would demonstrate, either directly or circumstantially, that she personally suffered any adverse employment consequences based on intentional gender discrimination regarding her compensation.

Urban-Klohn challenges this conclusion, relying on *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002), and at the same time insisting she has met *Twombly's* plausibility standards by pleading "enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. (Pl.'s Resp., ECF No. 13, 12 (quoting *Twombly*, 550 U.S. at 556).) While the Court agrees that *Swierkiewicz* supports Urban-Klohn's position that she need not set forth evidence establishing a prima facie case under the *McDonnell* framework[2] in order to survive dismissal, the Court nonetheless disagrees that that case absolves her from alleging actual facts which support her claim of gender discrimination. *See Pouyeh v. UAB Dept. of Ophthalmology*, 625 Fed. App'x 495, 497 (11th Cir. 2015) (holding that a complaint must contain factual allegations demonstrating, either directly or circumstantially, that a defendant's actions were discriminatory); *Henderson*, 436 Fed. App'x at 938 (requiring a plaintiff to

---

[2] Under the *McDonnell* framework, "[a] plaintiff establishes a prima facie case of disparate treatment by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." *Wilson*, 376 F.3d at 1087. If such comparators are unavailable, a plaintiff may establish a prima facie case by "present[ing] a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (quotations and citations omitted).

plead facts that "raise[] a plausible inference that [the defendant] discriminated against [the plaintiff]"). Ultimately, Urban-Klohn's allegations cannot carry her past dismissal.

For example, in support of her insistence that she has set forth sufficient facts, Urban-Klohn points to her allegations that "she was paid less than similarly-situated male employees," and "review[ed] . . . male employee[s'] paystubs showing they were earning more than females." (Pl.'s Resp. at 13.) But these allegations are nothing but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and therefore "do not suffice." *Watts v. Ford Motor Co.*, 519 Fed. App'x 584, 586 (11th Cir. 2013) (quoting *Iqbal,* 556 U.S. at 678). And while the Court agrees with Urban-Klohn that "[s]he is not required to lay out every single detail of her employment in her Complaint" (Pl.'s Resp. at 13), she must nonetheless provide at least some "nonconclusory descriptions of specific, discrete facts of the who, what, when, and where variety" that plausibly show she is actually entitled to relief. *Watts*, 519 Fed. App'x at 587 (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013)). It is not enough, as Urban-Klohn adamantly maintains, for her to simply "identif[y] the store where she worked and the years she was employed by Wal-Mart." (Pl.'s Resp. at 13.) There is nothing in these facts that would differentiate between an employee who experienced discrimination from one who did not. *See Veale v. Florida Dept. of Health*, 2:13-CV-77-FTM-38UAM, 2013 WL 5703577, at *5 (M.D. Fla. July 29, 2013) (requiring "allegations of specific facts to explain how the disparate treatment occurred" in order to properly plead Title VII discrimination).

Nor can the allegations Urban-Klohn sets forth within her disparate treatment count, or elsewhere, save her, as she suggests. These allegations, too, all suffer from their threadbare and conclusory nature as shown, by example, in the following:

- "Wal-Mart violated Title VII by paying Plaintiff less than similarly-qualified or less-qualified male employees." (Am. Compl. at ¶ 87.)
- "Wal-Mart's discriminatory practices . . . have denied Plaintiff compensation to which she is entitled." (*Id.* at ¶¶ 88, 91.)
- "Wal-Mart denied Plaintiff pay equal to that earned by similarly situated men." (*Id.* at ¶ 89.)
- "Wal-Mart's conduct of discriminating against Plaintiff by making compensation [decisions] on the basis of gender violates Title VII." (*Id.* at ¶ 90.)

These allegations all amount to nothing more than legal conclusions and formulaic recitations of the elements of Title VII discrimination claims. "These

allegations might have survived a motion to dismiss prior to *Twombly* and *Iqbal*. But now they do not." *Ansley v. Florida, Dept. of Revenue*, 409CV161-RH/WCS, 2009 WL 1973548, at *2 (N.D. Fla. July 8, 2009) (requiring a "plaintiff in an employment-discrimination case [to] allege facts that are either (1) sufficient to support a plausible inference of discrimination, or (2) sufficient to show, or at least support an inference, that he can make out a prima facie case under the familiar burden-shifting framework set forth in *McDonnell*").

Furthermore, Urban-Klohn's allegations regarding "Wal-Mart's policy of gender discrimination in Region 46" and "its systematic disparate pay issues during . . . Plaintiff's employment" (Pl.'s Resp. at 13) cannot secure her entitlement to relief. While "proof that an employer engaged in a pattern or practice of discrimination may be of substantial help in demonstrating an employer's liability in the individual case[,] such proof cannot relieve the plaintiff of the need to establish each element of his or her claim." *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 149 (2d Cir. 2012). So, for example, Urban-Klohn's allegation that, at some point, "[w]omen who held hourly positions in the store[] where Plaintiff . . . worked have been regularly paid less than similarly-situated men" even though, "on average, those women have more seniority and higher performance ratings than their male counterparts" is insufficient to show that she herself experienced pay discrimination—or even pay disparity. (Am. Compl. at ¶ 41.) This same principle applies to Urban-Klohn's allegations that "Managers in the store[] where Plaintiff has worked . . . justified denying promotions to women or paying them less than their male employees because of perceived family obligations of the women and male responsibility to support their families or because of their presumed inability to relocate." (*Id.* at ¶ 68.) Again, although "[e]vidence of an employer's general practice of discrimination may be highly relevant to an individual disparate treatment . . . claim," it is nonetheless not a viable "method of proof as an independent and distinct method of establishing liability." *Chin*, 685 F.3d at 150.

Finally, Urban-Klohn's attempts to tie these allegations of a pattern and practice of discrimination throughout the Walmart organization to the actual discrimination she says she herself was individually subjected to also fail. In each instance, Urban-Klohn's allegations are again conclusory and without any actual factual basis of support, for example:

- "Women, including Plaintiff, have been assigned to stores that generate lower profits, and a result were paid less than their male counterparts." (Am. Compl. at ¶ 60.)

-  "Plaintiff brings this claim individually but does so with the knowledge of other Plaintiffs from the same Wal-Mart Region with similar experiences." (*Id.* at ¶ 85.)

Even under the most liberal construction, these legal conclusions, generalities, and sweeping statements, without any actual supporting facts, do not sufficiently state a claim for discrimination that is plausible on its face. At most, Urban-Klohn has succeeded in establishing only the "sheer possibility" that Walmart has acted unlawfully. *Iqbal*, 556 U.S. at 678.

### B. Urban-Klohn fails to sufficiently allege claims for disparate impact regarding her pay.

Title VII makes an employer liable for disparate impact if "a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of . . . sex . . . and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e–2(k)(1)(A)(i). "[A] plaintiff can recover under the disparate impact theory by proving that some employment practice that is facially neutral in its treatment of similarly situated employees has a disproportionately adverse effect on those employees who are a member of some protected class." *Mitchell v. Jefferson County Bd. of Educ.*, 936 F.2d 539, 546 (11th Cir. 1991).

Urban-Klohn's allegations here fail to state a claim for disparate impact with respect to the pay of female versus male Walmart employees. To begin with, much like her allegations of disparate treatment, Urban-Klohn's allegations of disparate impact lack factual support. For instance, she charges that "Walmart's compensation policies, including its policy of using a set of prescribed factors to set starting pay for hourly associates at a pay rate above the minimum rate, as well as its policy of setting pay adjustments based on the associates' prior pay, have," together, "had an adverse impact upon female employees in the store[] where Plaintiff has worked." (*Id.* at ¶ 42.) Not only does this allegation fail to set forth specific supporting facts, it fails to identify the facially neutral aspects of the policies that have resulted in the purportedly adverse impact. Many of Urban-Klohn's other disparate-impact allegations are of the same ilk: for example, she says that "higher pay offered to external candidates as compared to internally-promoted [trainees] provided another opportunity to pay men more than women." (*Id.* at ¶ 52.) This allegation too is exactly the type of conclusory assertion that was held to be insufficient in *Iqbal*.

Additionally, many of Urban-Klohn's allegations fail to connect the adverse impact of a particular policy or procedure to any specific injury she herself has suffered. For example, Urban-Klohn explains that the "formulaic use of prior pay rates to set starting Assistant Manager pay meant prior pay disparities adverse to women would be perpetuated" and that "the use of exceptions . . . provided the opportunity to create additional disparities adverse to women." (Am. Compl.

at ¶ 57.) She also complains that "[p]erformance ratings . . . could incorporate bias and unfairly rate women Assistant Managers lower than their peers." (*Id.* at ¶ 58.) Similarly, she says, "merit increases were computed as a percentage of the base pay rate, perpetuating prior disparities in pay," providing another "opportunity for these decisionmakers to exercise bias in choosing whom to favor with these discretionary pay increases." (*Id.* at ¶ 59.) But none of these assertions is ever factually tied to adverse impacts Urban-Klohn says she herself endured. How did Urban-Klohn's own prior pay result in an adverse decision regarding her own starting base pay? What pay "exceptions" were applied such that she herself was negatively impacted? How did "performance ratings" negatively impact her? How did policies relating to assistant managers apply to her? Without supplying any causal links between the complained of policies and her own injury, Urban-Klohn cannot establish standing to complain about the resulting disparate impact based on these allegations. *See Tartt v. Wilson County, Tennessee*, 592 Fed. App'x 441, 447 (6th Cir. 2014) ("[A] plaintiff making an individual disparate-impact claim for discrimination must show that the challenged policy directly disadvantaged him in some fashion.") (quotation omitted).[3]

  Furthermore, many of the policies Urban-Klohn specifically identifies as having an adverse impact, were not introduced until years after Urban-Klohn had worked at Walmart. For example, Urban-Klohn identifies "a new pay structure" that Walmart implemented in 2004. (Am. Compl. at ¶ 45.) Urban-Klohn alleges that this "2004 pay restructuring had an adverse impact on female employees, including Plaintiff." (*Id.* at ¶ 46.) She similarly points to policies and procedures that Walmart adopted in 2005 and 2006 that both "had an adverse impact on women, including Plaintiff." (*Id.* at ¶¶47, 48.) These practices cannot possibly have adversely impacted Urban-Klohn when she says her employment ended in 2000.

  Finally, Urban-Klohn lists a wide range of policies and practices which she maintains have together combined to adversely impact the compensation of women at Walmart. Ordinarily, a plaintiff must "demonstrate that each particular challenged employment practice causes a disparate impact." 42 U.S.C. § 2000e-2(k)(1)(B)(i). However, when a plaintiff is able to "demonstrate to the court that the elements of a respondent's decisionmaking process are not capable of separation for analysis, the decisionmaking process may be analyzed as one employment practice." *Id.* The problem with Urban-Klohn's allegations

---

[3] The Court does not separately address Walmart's standing arguments because it finds that, aside from these allegations, other allegations in Urban-Klohn's complaint have sufficiently set forth the elements of Article III standing.

here is that she fails to connect the dozens of policies and procedures listed in her complaint with discernible, identifiable adverse employment impacts. Instead, she simply generally describes a jumble of disjointed policies and procedures—some affecting pay decisions; some affecting promotion decisions; some in force while Urban-Klohn was employed; some not; some affecting management positions; and some affecting only hourly positions—and then asserts that these policies "ha[ve] had an adverse impact on women," "collectively and individually," with respect to pay decisions. (Am. Compl. at ¶ 96.) She maintains that she can allege this jumble of policies collectively because (1) "Wal-Mart has failed . . . to create or maintain the data that would allow analysis of the impact of each of these policies and practices individually" and (2) Walmart does not "specify the weight that should be accorded to each of its requirements for pay." (*Id.* at ¶ 98; *see also id.* at ¶¶ 40, 44 (asserting that Walmart does not document the reasons for its compensation decisions).)

But in order to proceed in this way, Urban-Klohn must do more than just complain about Walmart's recordkeeping practices and instead she must allege that the many steps or practices involved are "so intertwined that they were not capable of separation for analysis" and actually "explain why the well-defined, discrete elements of the [decisionmaking process] are 'not capable of separation for analysis.'" *Davis v. Cintas Corp.*, 717 F.3d 476, 497 (6th Cir. 2013); *see also Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241 (2005) ("[I]t is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities.") (quotation omitted) (emphasis in original). Strikingly, Urban-Klohn herself seems to acknowledge that the practices are capable of separation when she says that the policies are both collectively *and* individually responsible for the resulting adverse impacts. (*See* Am. Compl. at ¶ 96.) Regardless, in the end, Urban-Klohn's allegations amount to nothing more than a description of a number of employment practices that she thinks generally favor men over women and her contention that, lumped together, are correlated with various disparate impacts. But, "[i]t is simply not enough to 'point out that the hiring practices at issue are relatively less generous' to some workers than to others." *Davis*, 717 F.3d at 497 (quoting *Smith*, 544 U.S. at 241 (internal quotation alterations in original omitted)). In sum, "a bare assertion of . . . imbalances in the workforce is not enough to establish a Title VII disparate impact claim." *Bennett v. Nucor Corp.*, 656 F.3d 802, 818 (8th Cir. 2011).

### 4. Conclusion

For the foregoing reasons, the Court finds Urban-Klohn's complaint and this action are due to be dismissed for her failure to state a claim on either count and therefore **grants** Walmart's motion (**ECF No. 7**). Because the Court finds the complaint due to be dismissed for these reasons, it declines to address the other alleged insufficiencies Walmart points to. Further, the Court dismisses Urban-Klohn's complaint without leave to amend. Urban-Klohn has not requested leave to amend; nor has she indicated any inclination to do so. And, because Urban-Klohn—twice as a putative class member, then as part of a group of plaintiffs, and now as an individual—has had multiple opportunities to amend her complaint, the Court dismisses her complaint with prejudice. *See Wagner v. Daewoo Heavy Industries Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."); *Avena v. Imperial Salon & Spa, Inc.*, 17-14179, 2018 WL 3239707, at *3 (11th Cir. July 3, 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend."); *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("[D]ismissal for failure to state a claim under [Rule] 12(b)(6) is a 'judgment on the merits.'"); *compare with Carter v. HSBC Mortg. Services, Inc.*, 622 Fed. App'x 783, 786 (11th Cir. 2015) ("A *pro se* plaintiff, however, *must* be given at least one chance to amend the complaint before the district court dismisses the action with prejudice, at least where a more carefully drafted complaint might state a claim.") (quotations omitted) (emphasis in original).

The Clerk is directed to **close** this case. Any pending motions are denied as moot.

**Done and ordered**, at Miami, Florida, on October 8, 2019.

_____
Robert N. Scola, Jr.
United States District Judge